UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | | |
|---|---|---|
| MELVIN R. KING, III, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:22-CV-00095-JRG-JEM |
| | ) | |
| TA'KISHA FITZGERALD *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on United States Magistrate Judge Jill E. McCook's Report and Recommendation [Doc. 11] and Plaintiff Melvin R. King, III's Objections [Doc. 12]. For the reasons herein, the Court will overrule Mr. King's objections.

### I. BACKGROUND

A state inmate, Mr. King brings a 220-page complaint against Defendants, alleging violations of the United States Constitution, the Tennessee Constitution, and numerous federal and state statutes. Judge McCook, who has screened Mr. King's complaint under 28 U.S.C. § 1915A,[1] summarizes Mr. King's claims as follows:

> Plaintiff states that the Court has jurisdiction over claims brought pursuant to 42 U.S.C. § 1983, along with various statutes. He names the following Defendants:
>
> (1) Assistant District Attorney General for Knox County, Tennessee, Takisha Fitzgerald ("General Fitzgerald"), in her official and individual capacities;

---

[1] Section 1915A states: "The court shall review, before docketing, if feasible, or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a government entity or officer or employee of a governmental entity." Judge McCook has screened Mr. King's complaint under § 1915A rather than under 28 U.S.C. § § 1915(e)(2) because he has paid his filing fee, [R&R 2], though the requirements of both statutes "overlap," *In re Prison Litig. Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997).

(2) Knox County Criminal Court Judge, Steven Sword ("Judge Sword"), in his official and individual capacities;

(3) Retired District Attorney General for Knox County, Tennessee, Randall Nichols ("General Nichols"), in his individual capacity;

(4) An unknown Knox County General Sessions Court Judge, in his/her individual capacity;

(5) Sheriff of Knox County, Tennessee, Jimmy Jones ("Sheriff Jones"), in his individual capacity;

(6) Former Knox County Criminal Clerk, Joy McCroskey ("McCroskey"), in her individual capacity;

(7) Trial attorney, Philip Lomonaco ("Lomonaco"), in his individual and official capacities;

(8) Former United States Attorney for the Eastern District of Tennessee, William Killian ("former United States Attorney Killian"), in his individual capacity;

(9) Director of the Tennessee Bureau of Investigation, Mark Gwyn ("Director Gwyn"), in his individual capacity;

(10) The Commissioner of the Tennessee Department of Corrections, Derrick Schofield ("Commissioner Schofield"), in his individual capacity;

(11) The classification director, Brandon Maloney ("Maloney"), in his individual and official capacities;

(12) The sentence information director, Candace Whisman ("Whisman"), in her individual or official capacities;

(13) Former Tennessee Attorney General Robert Cooper, Jr., ("former Tennessee Attorney General Cooper"), in his individual capacity;

(14) The Police Chief at the Knoxville Police Department ("Police Chief") in his individual capacity;

(15) An unknown pretrial services or office director in his/her individual capacity;

2

(16) The Director of the Tennessee Administrative Office of the Courts in his individual capacity;

(17) Former Governor of Tennessee, Bill Haslem ("Governor Haslam"), in his individual capacity;

(18) A United States Magistrate Judge in his/her individual capacity;

(19) A detective with the Knoxville Police Department, Clayton Madison ("Detective Madison"), in his individual capacity; and

(20) The District Attorney General for Knox County, Tennessee, Charme Allen ("General Allen"), in her official and individual capacities.

Plaintiff's allegations stem from his criminal proceedings in state court. Over the years, Plaintiff has reviewed his criminal history from the Federal Bureau of Investigation ("FBI") and the Tennessee Bureau of Investigation ("TBI"), and upon his review, he discovered that Defendants have committed numerous crimes [*Id.* at 2–3]. He says that, on or about June 26, 2014, through the date of the Complaint, Defendants General Fitzgerald, Judge Sword, retired General Nichols, Sheriff Jones, McCroskey, Lomonaco, former United States Attorney Killian, Director Gwyn, Commissioner Schofield, Maloney, Whisman, former Tennessee Attorney General Cooper, Governor Haslam, Detective Madison, General Allen, and other unknown individuals participated in a conspiracy to violate 18 U.S.C. §§ 241, 242, 1961 and 42 U.S.C. §§ 1981, 1982, 1983, and 1985 by engaging in the following actions:

(1) knowingly and willingly obstructing or impeding the administration of justice during the investigation, prosecution, or sentencing of the instant offense;

(2) producing a false, altered, or counterfeit document or record during an official investigation or judicial proceeding;

(3) providing a false name or identification document at the arrest, where such conduct actually resulted in hindrance to the investigation or prosecution of the instant offense;

(4) knowingly and willfully providing materially false information to a judge or magistrate;

(5) providing materially false information to a probation officer with respect to a felony presentence report or other investigation of the court;

3

(6) providing a materially false statement to a law enforcement officer that significantly obstructed or impeded the official investigation or prosecution of the instant offense;

(7) making false statements not under oath to law enforcement officers;

(8) knowingly and willfully fixing and falsifying all felony fingerprint dates of the arrest;

(9) knowingly and willfully fixing and falsifying all felony data in the automated fingerprint identification system ("AFIS") that contains the complete bureau of fingerprint files;

(10) knowingly and willingly fixing and falsifying all felony electronic files; and

(11) knowingly and willfully fixing and falsifying all felony state control number computerized database system of records for the sole purpose of financial gain and knowingly and willfully securing wrongful conviction status, unjust conviction, and imprisonment. [*Id.* at 45–47].

The overarching allegation in the Complaint is that the State did not have authority over Plaintiff's crimes. According to Plaintiff, the State prosecuted him on three Class A felonies, three Class B felonies, one Class C felony, two Class D felonies, and one Class E felony under 18 U.S.C. § 3559 [*Id.* at 112]. Pursuant to the Fifth Amendment, Plaintiff claims the federal government must initiate prosecutions of capital or otherwise infamous crimes by indictment, unless a defendant waives the right [*Id.* at 104]. Here, he states that the number of felonies brought against him constitutes a capital or otherwise infamous crime, meaning the federal government had to initiate prosecution [*Id.* at 113]. Plaintiff also alleges violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO") given that the State did not have authority to prosecute him, and Judge Sword did not have appropriate jurisdiction because he is not a judge under Article III [*Id.* at 67–68 and 112–13].

In addition, Plaintiff alleges that authorities with the City of Knoxville, Tennessee, arrested and detained him for more than 48 hours without a probable cause determination by a judge, court clerk, or other legally valid basis during the period between June 26, 2014, through the filing of his Complaint [*Id.* at 18]. Plaintiff claims that he did not violate any sections in Title 18 of the United States Code (i.e., 18 U.S.C. §§ 1–6005) [*Id.* at 102–03]. In addition to not alleging a federal offense, he says the indictment filed against him also failed to contain (1) the elements of the offense charged, (2) sufficient information to allow him to plead double jeopardy, (3) customary citations of the statutes he violated, (4) the authorized signature of a United States Attorney or attorney for the government, and (5) the authenticated signature of the Attorney General of the United States [*Id.*

4

at 107–08]. He alleges further RICO violations on the basis of these allegations [*Id.*].

In light of the above issues relating to his arrest, indictments, and the trial, Plaintiff moves the Court to dismiss all indictments [*Id.* at 121–29]. Plaintiff moves the Court to expunge and dismiss all public records or official records that were derived from the felony complaint [*Id.* at 134], as well as for the following relief: (1) dismissal of all criminal actions against him, (2) dismissal of the indictment pursuant to Rule 12(b) of the Federal Rules of Criminal Procedure because it was returned by the grand jury in violation of Plaintiff's rights under the Fifth Amendment, and (3) an inspection of the jury minutes to determine whether any evidence was presented to the grand jury in connection with the return of the indictment [*Id.* at 134, 137–38]. Plaintiff further moves the Court for a final entry of judgment that vacates his sentences and convictions [*Id.* at 144–51]. Plaintiff asserts he has sustained great loss, and he seeks damages in excess of $300 million dollars, plus the costs of this action and reasonable attorney's fees 4 The remaining allegations in Plaintiff's Complaint appear to be arguments about why Plaintiff's criminal trial was unconstitutional [Doc. 1 pp. 152–88]. [*Id.* at 142–44]. He also seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 and requests an attorney pursuant to the Criminal Justice Act ("CJA") [*Id.* at 15, 188–201].

[R&R at 3–8 (footnotes omitted)].

Judge McCook recommends that the Court dismiss Mr. King's case because he brings claims that are frivolous or malicious; fails to state plausible claims for relief; and requests monetary relief against parties who are immune from monetary relief. [*Id.* at 8–16]. Mr. King has filed objections to Judge McCook's report and recommendation, and having carefully considered his objections, the Court is now prepared to rule on them.

## II. LEGAL STANDARD

When reviewing a magistrate judge's recommendation on a dispositive issue, the Court conducts a de novo review of that recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ P. 72(b)(3). A magistrate judge's recommendation of dismissal under § 1915A is dispositive in nature. *See Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (stating that "the dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim under [§§ 1915(e)(2)(B)(ii) and 1915A]"). A de novo review requires the Court "to give fresh

5

consideration" to the issues before it. *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quotation omitted). In doing so, the Court reaches "the ultimate determination of the matter" through its own judicial discretion. *Id.* at 675–66. After its review, it "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

### III. ANALYSIS

In recommending the dismissal of Mr. King's case, Judge McCook first addresses Mr. King's allegations that only the federal government, and not the State, had the authority to prosecute him for his crimes. Judge McCook opines that his allegations that the State lacked authority and jurisdiction to prosecute him for his crimes are meritless for two reasons: first, he does not identify the crimes at issue in his pleading, and second, the dual-sovereignty doctrine allows the federal government and the State to bring separate criminal suits against a defendant, even when those suits arise out of the same criminal conduct. [R&R at 8 (citing *United States v. Louisville Edible Oil Products, Inc.*, 926 F.2d 584, 587 (6th Cir. 1991))].

Next, as to Mr. King's claim of a civil conspiracy, Judge McCook determines that his allegations lack factual detail to support this type of claim, which requires "some degree of specificity." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *see Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008) (stating that "pleading requirements governing civil conspiracies are relatively strict"). "A civil conspiracy," Judge McCook notes, "is an agreement between two or more persons to injure another by unlawful action" and requires an allegation that "an overt act was committed in furtherance of the conspiracy that caused injury to the complainant." [R&R at 8 (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985))]. Judge McCook concludes that although Mr. King alleges that Defendants conspired to falsify records, he fails

6

to allege sufficient facts to support a civil conspiracy because he does not identify the records at issue, the falsities in those records, or the parties who provided authorities with the alleged false records. [*Id.* at 9].

As to Mr. King's remaining claims, Judge McCook reasons that his claims under 42 U.S.C. § 1983[2] are faulty and warrant dismissal because he fails to adequately plead that the Defendants had personal involvement in the alleged unconstitutional conduct he complains of. [*Id.* at 9–10, 13]; *see Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381, at *1 (6th Cir. Sept. 20, 1995) ("Liability cannot be established absent a clear showing that the defendants were personally involved in the activity forming the basis of the alleged unconstitutional behavior." (citing *Rizzo v. Goode*, 423 U.S. 362, 372 (1976))). In addition, Judge McCook states that the Eleventh Amendment, the doctrine of sovereign immunity, the Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477 (1994), and the applicable one-year statute of limitations all preclude Mr. King's claims under § 1983. [R&R at 10–13].[3]

---

[2] Section 1983 permits a claim for damages against "[e]very person who, under color of [state law], subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Because § 1983 has "a 'color of law' requirement," a defendant can be liable "only if state law, whether provided by statute or judicially implied, empowers him with some legal obligation to act." *Doe v. Claiborne County*, 103 F.3d 495, 512 (6th Cir. 1996) (citation omitted). A claim under § 1983 therefore consists of two elements: the defendant (1) must deprive the plaintiff of either a constitutional or a federal statutory right and (2) must deprive the plaintiff of one of these rights while acting under color of state law (i.e., state action). *Id.* at 511. "Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

[3] "State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983," *Howard v. Rea*, 111 F. App'x 419, 421 (6th Cir. 2004) (citing *Wilson v. Garcia*, 471 U.S. 261, 268–69 (1985)), and "[f]or § 1983 actions arising in Tennessee, the statute of limitations is one year," *id.* (citing Tenn. Code Ann. § 28-3-104(a)(3)). Although Tennessee Code Annotated § 28-3-104(a)(3) governs the timeliness of Mr. King's claims under § 1983, courts do not rely on it to determine *when* these claims became actionable, or simply, when the statute of limitations begins to run. Rather, "the accrual date of a § 1983 cause of action is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "Under federal law, as under most laws," the discovery rule—an equitable common-law rule—generally governs the question of when a statute of limitations begins to run, meaning that "the limitations clock starts ticking 'when the claimant discovers, or in the exercise of reasonable diligence should have discovered, the acts constituting the alleged violation.'" *Winnett v. Caterpillar, Inc.*, 609 F.3d 404, 408 (6th Cir. 2010).

Judge McCook opines that Mr. King's § 1983 claims are untimely because he did not "file[] his lawsuit [until] approximately eight years" after the alleged "criminal conduct occurred on June 26, 2014." [R&R at 13]. An analysis under the discovery rule, however, is factual in nature, and the Court is not free to resolve questions of fact

7

In sum, Judge McCook rejects Mr. King's claims because his allegations are "vague, incomprehensible, conclusory, and devoid of any legal support," [*id.* at 13], and she recommends the Court dismiss them with prejudice, [*id.* at 14]. In response to Judge McCook's report and recommendation, Mr. King has filed an "Affidavit of Complaint," which, he states, "is made upon an 'Objection to the Report and Recommendation' of the magistrate judge." [Pl.'s Aff. & Objs., Doc. 12, at 2]. But in this filing, Mr. King does not directly or even tangentially address, much less oppose, any of the reasons for dismissal that Judge McCook cites in her report and recommendation. Instead, he merely summarizes the allegations in and the purpose of his complaint and makes general observations like "[a] primary and essential function of a federal court is to provide a forum for addressing alleged violations of civil rights" and "[o]bviously, seeking the truth and obtaining redress for wrongs, if wrongs have occurred, is the objective and obligation of any federal court." [*Id.*].

None of Mr. King's statements is sufficient to dissuade the Court from adopting Judge McCook's conclusion that Mr. King's case requires dismissal—a conclusion that the Court, having given fresh consideration to Mr. King's claims under a de novo review, agrees with. The only remaining question is whether the Court should dismiss his claims with or without prejudice. When a plaintiff like Mr. King has paid the filing fee, "[g]enerally, a district court may not *sua sponte* dismiss a complaint . . . unless the court gives the plaintiff the opportunity to amend the complaint." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999) (citations omitted). But even so, "a district court may, at any time, sua sponte dismiss a complaint for lack of subject

---

at the pleading stage. *See Munson Hardisty, LLC v. Legacy Pointe Apartments, LLC*, 359 F. Supp. 3d 546, 566 (E.D. Tenn. 2019) ("Determining the applicable statute of limitations period is a question of fact under statutes that have adopted the discovery rule." (citation omitted)); *see Ecclesiastical Order of the ISM of AM, Inc. v. IRS*, 725 F.2d 398, 403 (6th Cir. 1984) (Jones, J., concurring in part and dissenting in part) ("[T]he court is not to resolve issues of fact in the context of a motion to dismiss[.]"), *and Mike Vaughn Custom Sports, Inc. v. Piku*, 15 F. Supp. 3d 735, 753 (E.D. Mich. 2014) ("The Court cannot resolve questions of fact on a motion to dismiss." (citations omitted)).

matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuative, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* (citing *Hagans v. Lavine*, 415 U.S. 528, 536–37 (1974)).

To the extent that Judge McCook characterizes Mr. King's § 1983 claims as deficient because he fails to sufficiently allege the Defendants' personal involvement in a constitutional violation, that deficiency is one that Mr. King could conceivably rectify with the opportunity to amend his complaint.[4] But importantly, § 1983 "does not confer substantive rights" on a party, meaning that a violation of a constitutional or a federal statutory right is a prerequisite to a plaintiff's claim under § 1983, *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010), and Mr. King's allegations of a constitutional violation are so outlandish and otherwise devoid of merit that even if he had the opportunity to shore up his allegations of personal involvement, he still would be unable to buoy his claims.

Judge McCook's reliance on *Heck* is particularly persuasive in demonstrating that Mr. King would be unable to come forward with merit-worthy § 1983 claims even with the chance to amend his complaint. In *Heck*, the Supreme Court held that a state prisoner cannot use § 1983 to allege that his conviction or sentence violated his constitutional rights unless "his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487 (citation omitted). None of these scenarios applies to Mr. King, who unsuccessfully attempted to invalidate his sentence and conviction on

---

[4] The Court notes that Mr. King brings suit against one private party, Philip Lomonaco, but he cannot be liable under § 1983 no matter the extent of his alleged involvement. *See Milstead v. Bedford Cnty. Sheriff's Dep't*, No. 4:12–CV–52, 2014 WL 420395, at *3 (E.D. Tenn. Feb. 4, 2014) (stating that "§ 1983 applies to acts of the states, not to acts of private parties").

9

direct appeal and in post-conviction proceedings. *See State v. King*, No. E2016–01043–CCA–R3–CD, 2017 WL 2242295 (Tenn. Ct. Crim. App. May 22, 2017); *King v. State*, No. E2021-00037-CCA-R3-PC, 2022 WL 713425 (Tenn. Ct. Crim. App. Mar. 10, 2022).

Having failed to convince the state courts to disturb his sentence and conviction, he now resorts to calling on this Court to do what the state courts declined to do—invalidate his sentence and conviction. *See* [Compl. at 134, 137–38 (claiming that the State "had no legal authority and jurisdiction to impose [his] sentence and imprisonment" and asking this Court to invalidate his sentence and conviction); *id.* at 151 (imploring this Court to "vacate the 'illegal' sentences and convictions on the grounds that there was no jurisdiction")]. *Heck*, however, forecloses Mr. King's reliance on § 1983 to invalidate his sentence in the first instance. *See Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) ("[A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—*if* success in that action would necessarily demonstrate the invalidity of confinement or its duration."). So, in sum, Mr. King's § 1983 claims are devoid of merit, not only because of the outlandish nature of his allegations but also because *Heck* forestalls them, and he is therefore not entitled to amend these claims. *Apple*, 183 F.3d at 479.

On a similar front, Mr. King's claim that the State lacked authority and jurisdiction to prosecute his crimes is fallacious, if not frivolous, and he is therefore not entitled to amend this claim either. *Apple*, 183 F.3d at 479. A simple review of case law shows that the State prosecuted Mr. King for "first degree felony murder, aggravated burglary, employing a firearm during the commission of a dangerous felony, three counts of especially aggravated kidnapping, reckless aggravated assault, attempted especially aggravated robbery, and aggravated animal cruelty,"

*King*, 2022 WL 713425 at *1, each of which is a state crime and comes within the State's jurisdiction and discretion to prosecute.[5]

Lastly, as to Mr. King's claims of conspiracy, he alleges multiple conspiracies under four separate statutes: 18 U.S.C. §§ 241, 371, 1961, and 42 U.S.C. § 1985. [Compl. at 1, 34]. The first three of these statutes comprise the United States Criminal Code, and Mr. King has no standing to attempt to enforce these statutes by filing suit under them. *See Ellison v. Leffler*, No. 93–2606, 1994 WL 276926, at *2 (6th Cir. June 21, 1994) (affirming the dismissal of the pro se prisoner's claim under 18 U.S.C. § 241 because "th[is] statute[] [is] criminal in nature and make[s] no provisions for recovery of civil damages"). Mr. King's claims under these statutes is therefore devoid of merit, and he is not entitled to amend them. *Apple*, 183 F.3d at 479.

Mr. King's claim of a conspiracy under 42 U.S.C. § 1985, however, is not criminal in nature but civil, and he brings this claim specifically under § 1985(1), which states:

> (1) Preventing officer from performing duties
>
> If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties[.]

Unlike § 1983, § 1985(1), "which prohibits conspiracies to interfere with *federal* officers in the performance of their duties," *Fox. v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir.

---

[5] The Court has license to take judicial notice of judicial opinions. *See United States v. Dedman*, 527 F.3d 577, 586 (6th Cir. 2008) ("The law of any state of the Union, whether depending upon statutes or upon judicial opinions, is a matter of which the courts of the United States are *bound to take judicial notice*, without plea or proof." (emphasis in original) (quoting *Lamar v. Micou*, 114 U.S. 218, 223 (1885))); *Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) ("[W]e may take judicial notice of judicial opinions[.]" (internal citation omitted)).

11

2006) (emphasis added), does confer parties with substantive statutory rights and therefore does not require allegations of a constitutional violation, *see Kush v. Rutledge*, 460 U.S. 719, 724–25 (1983) (holding that § 1985(1) does not require conspirators to act with intent to deprive their victims of equal protection); *Mollnow v. Carlton*, 716 F.2d 627, 630–31 (9th Cir. 1983) (holding that § 1985(1), "in contrast to certain other civil rights statutes . . . create[es] substantive rights and [is] not . . . limited to providing a remedy for the violation of a constitutional provision" (citations omitted)).

As Judge McCook points out, a civil conspiracy requires the commission of an unlawful action by its conspirators, [R&R at 8], but the unlawful action that Mr. King complains of is wholly without merit, if not frivolous. The gestalt of Mr. King's complaint is that the unlawful action of the conspiracy—to the extent that the conspiracy involved interference with federal officers' duties—is the State's decision to prosecute him when it lacked jurisdiction over his crimes and its failure to cede prosecutorial discretion to federal authorities. But again, a cursory review of case law shows that the State did not remotely interfere with federal officers' duties because it prosecuted Mr. King for state crimes, which fell squarely within its jurisdiction. *See King*, 2022 WL 713425 at *1. In short, the legal theory underlying Mr. King's § 1985(1) claim is so thoroughly baseless that he is not entitled to amend this claim. *Apple*, 183 F.3d at 479.

Mr. King's objections are therefore **OVERRULED**, and the Court **ACCEPTS** Judge McCook's report and recommendation under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b). For the reasons in the report and recommendation, which the Court adopts and incorporates into this Order, and for the reasons that the Court has identified in this Order under a de novo review, it is **ORDERED** that this case is **DISMISSED with prejudice**. The Clerk of Court is **DIRECTED** to close this case.

So ordered.

ENTER:

                                                    s/J. RONNIE GREER
                                      UNITED STATES DISTRICT JUDGE